**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING**

**DONNA JEAN CARR-COOPER,**

**Plaintiff,**

**v.**

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of Social Security,**

**Defendant.**

**CIVIL ACTION NO.: 5:22-CV-174**
**(JUDGE BAILEY)**

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

This case arises from the denial of Plaintiff Donna Jean Carr-Cooper's ("Plaintiff") Title II application for disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"). Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB does contain legal error and is not supported by substantial evidence, the undersigned **REPORTS** and **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 12] by which she requests that the ALJ's decision be set aside, be **GRANTED** and Defendant's Motion for Summary Judgment [ECF No. 15] be **DENIED**.

---

[1] Kilolo Kijakazi may be automatically substituted in place of former commissioner Andrew M. Saul pursuant to Fed. R. Civ. P. 25(d).

## II.   **PROCEDURAL HISTORY**

On July 15, 2018, Plaintiff filed her application under the Social Security Act for DIB, alleging disability that began on November 15, 2015. (R. 15). Plaintiff's date last insured ("DLI") is December 31, 2020; to receive DIB, then, Plaintiff must show that she was disabled on or before that date. This claim was initially denied on April 2, 2019 (R. 88) and denied again upon reconsideration on July 3, 2019. (R. 94). On July 16, 2019, Plaintiff made a request for a hearing (R. 97), which was held before the ALJ on October 7, 2021, in Morgantown, West Virginia. (R. 40). Plaintiff, represented by counsel, Michael J. Plowman, appeared via teleconference and testified. James Ganoe, an impartial vocational expert ("VE"), also testified at the hearing. Id. On October 27, 2021, the ALJ issued an unfavorable decision to Plaintiff, finding that she was not disabled within the meaning of the Act. (R. 34).

Plaintiff filed a request for review of hearing decision dated October 27, 2021. (R. 187-190). Subsequently, on May 19, 2022, the Appeals Council issued a Notice denying Plaintiff's request for review. (R. 1). Plaintiff filed her Complaint with this Court on July 14, 2022. [ECF No. 1]. The Commissioner filed the Answer on September 30, 2022 [ECF No. 7] and the Administrative Record on October 3, 2022. [ECF No. 8]. Plaintiff filed a Motion for Summary Judgment and brief in support, thereof, on October 31, 2022. [ECF Nos. 12, 12-1]. Defendant filed a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on December 29, 2022. [ECF No. 15. Plaintiff filed a reply in support of her summary judgment motion on January 6, 2023. [ECF No. 18]. After the matter was fully briefed, the undersigned conducted a hearing on March 8, 2023 to receive argument from counsel.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having

reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

## III.    BACKGROUND

### A.  Personal History

Plaintiff's date of birth is August 23, 1964, and she was 51 years old at the onset date of alleged disability, November 15, 2015. (R. 33). At the time of the alleged onset date, Plaintiff was a person closely approaching "advanced age" (age 50-54) under the Regulations. Id. See 20 C.F.R. § 1563(d). Plaintiff is five feet, six inches tall and weighs approximately 200 pounds. (R. 47). At the time of the hearing before the ALJ, Plaintiff was married and lived in her home with her spouse and two sons. (R. 48). And at the time of the ALJ's hearing, Plaintiff's sons were age 22 and 17, respectively; both of the sons are autistic, and the younger of them was being homeschooled. Id. Plaintiff's husband had retired because of a disability. (R. 48-49). Plaintiff completed high school. (R. 48). Plaintiff had never received any vocational training or obtained any licenses or certification related to employment. (R. 49).

Plaintiff had done no work since her alleged onset date of November 15, 2015. Id. Plaintiff has worked various food industry jobs. (R. 50). The most recent job which Plaintiff held was at Caswick Marketing, a pizza shop, which involved food preparation, running the cash register, and accounting for inventory. (R. 50-51). She worked there for approximately one year, 12 hours per day, seven days per week. (R. 50). At Caswick Marketing, Plaintiff would lift upwards of 50 pounds, approximately three days per week. (R. 51). Plaintiff was on her feet all of the time at the Caswick Marketing job. Id.

Prior to her work at Caswick Marketing, Plaintiff worked at Luigi's Italian Deli. Id. Plaintiff worked there only approximately three days, when her employment was terminated

because she did not work quickly enough. (R. 52). Prior to her work at Luigi's Italian Deli, Plaintiff worked at Café Sito, a café and deli. Id. Plaintiff worked in this position for approximately one month. Id. The position at Café Sito was part-time. Id.

Prior to her work at Café Sito, Plaintiff worked at Roland Park Bakery, for a period of six months, until the owner sold the business. Id. At Roland Park Bakery, Plaintiff cooked meals and was a waitress. Id. At Roland Park Bakery, Plaintiff did no lifting, but was on her feet all of the time. (R. 52-53).

Before working at Roland Park Bakery, Plaintiff worked at Harry Little Carryout Shop as a cook. (R. 53). At that position, Plaintiff lifted upwards of 50 pounds, every three weeks, when taking delivery of inventory. (R. 53-54). When she had to lift such weight, it was only one time, not repeatedly. (R. 54). In the position at Roland Park Bakery, Plaintiff was on her feet all the time. Id. She held that position from 1999 to 2014, when it closed. Id.

Finally, Plaintiff worked at New System Bakery, which was a part-time job, one day per week. (R. 55).

The jobs which the ALJ counted as past work were the ones at (1) Harry Little Carryout Shop, (2) Roland Park Bakery, and (3) Caswick Market. Id.

Before the ALJ, Plaintiff alleged that she is limited in her ability to work due to: knee pain, post-traumatic stress disorder, and carpal tunnel syndrome in both wrists. (R. 55-58).

### B. Medical History

In accordance with the Court's Order Directing Filing of Briefs [ECF No. 9], the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. Accordingly, the undersigned relies upon

those stipulated facts throughout this report and recommendation. <u>See</u> Pl's Brief Supp. Mot.

Summ. J., ECF No. 12, at 13-4; Def.'s Mem. Op., ECF No. 15, at 2-6.

## IV.   THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The Commissioner uses the following five-step sequential evaluation

process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4); 416.920. If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. Id.

## V.    ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that, from November 15, 2015, the alleged onset date, through December 31, 2020 (the dated on which Plaintiff last met the Act's insured status requirements), Plaintiff did not engage in any substantial gainful activity. (R. 17). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: osteoarthritis (OA) of the bilateral knees, carpal tunnel syndrome (CTS), bladder prolapse and urinary incontinence, obesity, tendinitis/tendinosis of the right shoulder, migraine headaches, major depressive disorder (MDD), and post-traumatic stress disorder (PTSD). (R. 17). At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. (R. 18). At step four, the ALJ determined the Plaintiff's RFC to be as follows:

> to perform light work as defined in 20 CFR 404.1567(b) except she could never climb ladders, ropes, or scaffolds. She could occasionally climb ramps or stairs, balance, stoop, and crawl. She could frequently crouch. She needed to avoid concentrated exposure to extreme cold and any hazards, such as dangerous moving machinery and unprotected heights. She was capable of no more than occasional changes in the work setting. She was limited to occasional overhead reaching with the right upper extremity.

(R. 22). Finally, at step five, the ALJ determined that Plaintiff is capable of performing past relevant work (1) as a cook (as generally performed, at Harry Little Carry Out Shop), and (2) as a cook/waitress (as actually performed, as Roland Park Bakery). (R. 31). Alternatively, as to step 5, the ALJ determined that Plaintiff was able to perform other jobs in the national economy prior to her turning age 55. However, Plaintiff turned age 55 after the alleged onset date, categorizing her as an individual of advanced age and rendering her unable to perform these other jobs. The ALJ

found that she nonetheless could perform past relevant work even after attaining age 55. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Act. (R. 34).

## VI.    DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. See generally Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

### B.  Contention of the Parties

Plaintiff contends that the ALJ's decision is unsupported by substantial evidence. [ECF No. 12]. Plaintiff's principal argument is that the ALJ erred by not accounting for all of Plaintiff's mental limitations, and by improperly evaluating Plaintiff's knee problems. As for the mental limitations, Plaintiff argues, the ALJ acknowledged them but did not explain why they were excluded from the RFC. Thus, Plaintiff would have the Court remand the matter for the ALJ to more fully develop the record to explain the absence of mental limitations in the RFC. As for the knee problems, Plaintiff argues, the ALJ erred by glossing over the degree of her knee deterioration, and by giving insufficient due to Plaintiff's subjective complaints of pain. All taken together, Plaintiff argues, she can perform sedentary work at best, and if she is limited to sedentary work, then by operation of her age, she is disabled under the Act.

Defendant argues, on the other hand, that the ALJ's decision is supported by substantial evidence. As to the mental limitations, Defendant argues that the ALJ parsed through the record to show that Plaintiff's mental condition actually had improved, and in any case, accommodated mental limitations in the RFC by requiring no more than occasional changes in work setting. As for Plaintiff's subjective complaints of knee pain, Defendant argues that the ALJ detailed how those subjective complaints are inconsistent with the objective record.

### C.  Analysis of the Administrative Law Judge's Decision

As is frequently the case in the review of these matters, the main substantive issue is whether the ALJ's review of the medical records is sufficient enough to receive deference under the "substantial evidence," standard, or whether the ALJ's review was so deficient as to merit remand. In particular, the issues are narrowed to (1) whether the ALJ sufficiently accounted for Plaintiff's mental limitations in crafting the RFC and concluding that she can perform past relevant

work, and (2) whether the ALJ properly reviewed the record regarding Plaintiff's limitations owing to knee pain, and sufficiently accounted for Plaintiff's <u>subjective</u> complaints of knee pain. Here, the undersigned **FINDS** that substantial evidence does <u>not</u> support the ALJ's review, such that the decision below is <u>not</u> entitled to deference.

    *1. The ALJ's evaluation of Plaintiff's mental limitations in relation to the Listings.*

    The record demonstrates – and the ALJ acknowledged – that Plaintiff has certain mental limitations. The issue with the ALJ's findings and conclusions about those mental limitations, though, is that the ALJ did not explain why mental limitations were omitted from, or downplayed in, the RFC. As Plaintiff rightly argues, this leaves the Court to guess as to why those limitations were not included in the RFC.

    As a foundational matter, in Defendant's own regulations, all of a claimant's limitations must be evaluated. This includes a claimant's mental limitations, regardless of whether it is the sole impairment or one of multiple impairments:

> (1) Residual functional capacity assessment. Your impairment(s), and any related symptoms, such as pain, may cause physical and <u>mental limitations</u> that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record. (See § 404.1546.)
>
> (2) If you have more than one impairment. <u>We will consider all of your medically determinable impairments of which we are aware</u> . . .
>
> …
>
> (4) What we will consider in assessing residual functional capacity. When we assess your residual functional capacity, we will consider your ability to meet the physical, <u>mental</u>, sensory, and other requirements of work, as described in paragraphs (b), (c), and (d) of this section.

20 C.F.R. § 404.1545(a) (emphases added).

Defendant stresses that, in the ALJ's decision, the ALJ in fact referred to mental limitations. Defendant points to how the ALJ references a section of the record, the daily activities report, which contains Plaintiff's own descriptions of her limitations. (R. 22, 231-238). Defendant argues that Plaintiff did not detail mental limitations here, so the ALJ need not explain why mental limitations were excluded from the RFC.

However, Plaintiff helpfully points out the key problem with this analysis: the record shows, and the ALJ acknowledged at step two, that Plaintiff has specific limitations in this regard (concentrating, maintaining pace, interactions with other people). But there is insufficient explanation as to why those limitations were excluded from the RFC. In the determination of RFC, the ALJ accounts for mental limitations only to the extent that Plaintiff is limited to "no more than occasional changes in work setting." (R. 22). Starkly missing from that RFC acknowledgement of Plaintiff's limitations concerning persistence and pace, interactions with others, and concentration.

To be clear, in her briefing, Plaintiff does not attempt to demonstrate that these limitations are disabling, nor is she required to at this juncture. Rather, the inquiry simply is whether the ALJ properly accounted for and evaluated those limitations. The undersigned concludes that the ALJ did not. As Plaintiff notes, the absence of discussion about the mental limitations in the RFC leaves the Court to guess as to why the limitations were excluded. In the context of a Social Security case, the Fourth Circuit has spoken of the need for a well-rounded ALJ decision to afford meaningful review. Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 662 (4th Cir. 2017). "Where an insufficient record precludes a determination that substantial evidence supported the ALJ's denial of benefits, this court may not affirm for harmless error." Id. at 658. In the instant matter, with the gap between Plaintiff's established mental limitations and the RFC conducted, the Court cannot conduct a proper substantive review of the ALJ's decision.

In sum, in the undersigned's review, the ALJ improperly excluded Plaintiff's mental limitations in the RFC. Accordingly, the undersigned **FINDS** that the ALJ's conclusions should <u>not</u> stand and that the matter should be remanded for further evaluation, incorporating the full breadth of Plaintiff's mental limitations.

   *2. The ALJ's evaluation of Plaintiff's knee pain in relation to the Listings.*

   The record demonstrates that Plaintiff has certain limitations with regard to knee pain, with impacts to her mobility as a result. The tension in many such reviews is whether a claimant's subjective complaints are consistent with the record. The issue here (and commonly in many other such reviews) is the ALJ's handling of Plaintiff's subjective complaints of pain, as compared to an ostensible lack of objective information in the record about that pain. In the instant matter, the issue is that the ALJ did not give due weight to Plaintiff's subjective complaints, especially with the ALJ's reliance on state agency findings that do not reflect later-obtained imaging showing degenerative changes in Plaintiff's knees.

   Certainly, agency regulations established that the <u>objective</u> record is a critical driver of an ALJ's review. 20 C.F.R. § 404.1529(c)(2). But also, per agency regulations, a review of the objective record is not the end of the analysis. In pertinent part, the regulations provide:

> Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms. <u>Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account</u> as explained in paragraph (c)(4) of this section in reaching a

conclusion as to whether you are disabled. We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons.

20 C.F.R. § 404.1529(c)(3) (emphasis added). As the Fourth Circuit has set forth, the regulations establish a two-step process:

> First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3. Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled.

Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 95 (4th Cir. 2020). In other words, a claimant may demonstrate that their subjective symptoms of pain, standing alone, preclude work. In the instant matter, the there is no dispute that Plaintiff meets the first step of this analysis – i.e. that objective evidence shows her to have a "medically determinable impairment." The ALJ found as much. Rather, the issue lies with the second step – evaluation of the intensity and persistence of Plaintiff's symptoms. To that end, as the Fourth Circuit in Arakas emphasized, SSR 16-3p bears on the analysis, by requiring other evidence and other factors, namely:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at ¶ 2(d).

This directive about objective evidence not necessarily being required is of particular relevance in the instant matter. More to the point, the ALJ here did not conduct the requisite thorough, holistic analysis. Rather, the ALJ narrowly analyzed the record to point to a lack of objective findings about knee pain, and instead should have conducted a comprehensive analysis to review subjective complaints of pain. Certainly, the ALJ's summary of the objective medical record is thorough. (R. 23-29). But in so doing, the ALJ gave short shrift to Plaintiff's subjective complaints of pain, contrary to the Regulations and Fourth Circuit precedent. After all, the subjective evidence of Plaintiff's pain is considerable. Plaintiff reported difficulty standing for long periods (R. 55, 231), walking appreciable distances for fear of knee issues (R. 55, 236), being on her feet longer than 10 minutes (R. 59), and traversing stairs (R. 55). Because of difficulty with stairs, Plaintiff relocated her bed to the first floor of her home (R. 55) and props up her feet much of the time. (R. 58). Yet, the ALJ simply emphasized a lack of objective findings regarding knee pain, and should have accounted for and evaluated this myriad of subjective complaints.

To this end, the ALJ also selectively reviewed the daily activities which Plaintiff performs to conclude that she is not disabled. The record indeed shows that Plaintiff can perform certain daily activities. And SSR 16-3p plainly sets forth that a claimant's daily activities are part of an ALJ's analysis. Here, Plaintiff performs certain errands, does some cleaning, and renders care to her family. (R. 29). The ALJ seized on this as weighty evidence that Plaintiff is not disabled. Id. Yet, the ALJ discounted other evidence in the record about how Plaintiff relies on family members for performing certain tasks and chores, e.g. pet care, cooking, certain household chores. (R. 58-59, 232-233). And the ALJ discounted how Plaintiff travels only for medical appointments, does not do the household shopping (R.234-235), and is quite limited in how she can care for

13

grandchildren. (R. 60, 236, 547). At bottom, in summarizing and drawing conclusions about Plaintiff's abilities in relation to her daily activities, the ALJ inexplicably discounts Plaintiff's limitations in her daily activities. The ALJ does not explain how this supports a conclusion that Plaintiff can hold down full-time work. After all, just because a claimant sometimes can perform daily activities, that does not necessarily support a finding that a claimant is not disabled. Totten v. Califano, 624 F.2d 10, 11 (4th Cir. 1980). Thus, the ALJ's analysis of daily activities is, at best, puzzling, and should be more fully developed to better account for Plaintiff's limitations in daily activities.

On a related note, as to knee pain, the ALJ's decision merits remand because of improper review of the State Agency findings. In sum, the State Agency rendered an opinion in July 2019, concluding that Plaintiff's knee condition limited her, but that she still could undertake light, exertional work. (R. 75-86). The ALJ found this to be persuasive, and supportive of the finding that Plaintiff is not disabled. (R. 30). However, as Plaintiff compellingly notes, the State Agency finding does not incorporate imaging of Plaintiff's knees, generated later that same year, which shows, in the right knee "mild to moderate degenerative changes," "small osteophytes" (bone spurs), and "moderate narrowing of the medial joint compartment." (R. 380). As to the left knee, the imaging shows "moderate degenerative changes" resulting in "near bone on bone" contact "with sclerosis and osteophytosis." (R. 382).

Obviously, because this imagery showing further deterioration of Plaintiff's knees occurred in November 2019, the State Agency earlier findings in July 2019 could not have accounted for Plaintiff's greater degree of difficulty and limitation. The State Agency concluded that Plaintiff had only mild, not moderate, degeneration. And because the ALJ relied on the State

Agency findings in this regard, the matter should be returned to the ALJ to evaluate the issue on this point.

In sum, in the undersigned's review, the ALJ improperly reviewed Plaintiff's subjective complaints of knee pain in arriving at the RFC. Accordingly, the undersigned **FINDS** that the ALJ's substantive findings should <u>not</u> stand, and that the matter should be remanded for further evaluation, to incorporate the full breadth of Plaintiff's subjective complaints of knee pain, and to review the State Agency decision in light of later-performed imagery of Plaintiff's knees.

## VII.   <u>RECOMMENDATION</u>

For the reasons herein stated, the undersigned **FINDS** that the Commissioner's decision denying Plaintiff's claim for DIB <u>does</u> contain legal error and is <u>not</u> supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 12] be **GRANTED**, Defendant's Motion for Summary Judgment [ECF No. 15] be **DENIED**, and the decision of the Commissioner be **REMANDED** for further development and review consistent with the opinion of the presiding District Judge.

Any party shall have fourteen (14) days (filing of objections) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.**  A copy of such objections should also be submitted to the presiding District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of**

**appellate review by the Circuit Court of Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 19th day of May, 2023.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE